UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>         Plaintiff,<br><br>v.<br><br>JOHN DOE,<br><br>         Defendant. | Case No.: 20-cv-00068-BAS-JLB<br><br>**ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**<br><br>**[ECF No. 4]** |

  Before the Court is Plaintiff's *Ex Parte* Application for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference. (ECF No. 4.) No opposition was filed, as no defendant has been named or served in this case. For the reasons set forth below, Plaintiff's *ex parte* motion is **GRANTED**.

        **I. BACKGROUND**

  This is one of the numerous cases filed by Plaintiff alleging copyright infringement claims against a John Doe defendant using the BitTorrent file-sharing system.[1] Plaintiff

---

[1]  Since December 2019 to date, Strike 3 Holdings, LLC has filed seven separate cases against John Does in this District: 19-cv-02452-JAH-LL; 19-cv-02488-LAB-AHG; 20-cv-

alleges that it is the copyright owner of motion pictures distributed through adult content websites *Blacked*, *Tushy*, *Blacked Raw*, and *Vixen*. (ECF No. 1 ¶¶ 2–3.) Plaintiff alleges that between January 16, 2019, and November 22, 2019,[2] the person or entity assigned Internet Protocol ("IP") address 174.66.186.144 illegally downloaded and distributed fifty-two of Plaintiff's motion pictures through his, her, or its use of the online BitTorrent file distribution network. (*Id.* ¶¶ 4–5, 25; ECF No. 1-2 at 1–3.) On January 8, 2020, Plaintiff commenced this action against Defendant "John Doe, subscriber assigned IP address 174.66.186.144." (ECF No. 1.) The Complaint alleges a single claim of copyright infringement. (*Id.* ¶¶ 37–42.)

Because Defendant used the Internet to commit the alleged infringement, Plaintiff knows Defendant only by his, her, or its IP address, which was assigned to Defendant by the Internet Service Provider ("ISP") Cox Communications. (*Id.* ¶ 6.) In the present motion, Plaintiff asserts that Cox Communications is the owner of Defendant's IP address, and thus, "is the only party with the information necessary to identify Defendant." (ECF No. 4-1 at 6.) Plaintiff therefore seeks leave to serve a Rule 45 subpoena on Cox Communications requesting the name and address associated with IP address 174.66.186.144. (*Id.* at 7.)

## II. <u>LEGAL STANDARD</u>

Discovery is not permitted before the parties have conferred pursuant to Federal Rule of Civil Procedure 26(f) unless authorized by court order. Fed. R. Civ. P. 26(d)(1). "[H]owever, in rare cases, courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts

---

00067-LAB-LL; 20-cv-00068-BAS-JLB; 20-cv-00209-BAS-JLB; 20-cv-00308-GPC-RBB; 20-cv-00309-BEN-MDD.

[2] Plaintiff does not specifically allege this infringement period in the Complaint but attaches as an exhibit to the Complaint a table reflecting that the subscriber assigned IP address 174.66.186.144 engaged in allegedly infringing activity between January 16, 2019, and November 22, 2019. (ECF No. 1-2 at 1–3.)

necessary to permit service on the defendant." *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999). Requests to conduct discovery prior to a Rule 26(f) conference are granted upon a showing of good cause by the moving party, which may be found "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275–76 (N.D. Cal. 2002). "A district court's decision to grant discovery to determine jurisdictional facts is a matter of discretion." *Columbia Ins. Co.*, 185 F.R.D. at 578.

District courts in the Ninth Circuit apply a three-factor test to determine whether good cause exists to allow for expedited discovery to identify Doe defendants. *Id.* at 578–80. "First, the plaintiff should identify the missing party with sufficient specificity such that the Court can determine that [the] defendant is a real person or entity who could be sued in federal court." *Id.* at 578. Second, the plaintiff "should identify all previous steps taken to locate the elusive defendant" to ensure that the plaintiff has made a good faith effort to identify and serve process on the defendant. *Id.* at 579. Third, the plaintiff "should establish to the Court's satisfaction that [the] plaintiff's suit against [the] defendant could withstand a motion to dismiss." *Id.* "Lastly, the plaintiff should file a request for discovery with the Court, along with a statement of reasons justifying the specific discovery requested as well as identification of a limited number of persons or entities on whom discovery process might be served and for which there is a reasonable likelihood that the discovery process will lead to identifying information about [the] defendant that would make service of process possible." *Id.* at 580.

### III.  DISCUSSION

Plaintiff seeks leave to serve a Rule 45 subpoena on Cox Communications before the Rule 26(f) conference so that Plaintiff may obtain "the true name and address of Defendant." (ECF No. 4-1 at 7.) Plaintiff represents that it "will only use this information to prosecute the claims made in its Complaint," and "without this information, Plaintiff cannot serve Defendant nor pursue this lawsuit and protect its copyrights." (*Id.*)

A.      **Identification of Missing Party with Sufficient Specificity**

For the Court to grant Plaintiff's motion, Plaintiff must first identify Defendant with enough specificity to enable the Court to determine that Defendant is a real person or entity who is subject to the Court's jurisdiction. *See Columbia Ins. Co.*, 185 F.R.D. at 578. The Court finds that Plaintiff has met this burden.

Courts in the Ninth Circuit have determined that "a plaintiff identifies Doe defendants with sufficient specificity" in cases like the instant case "by providing the unique IP addresses assigned to an individual defendant on the day of the allegedly infringing conduct, and by using 'geolocation technology' to trace the IP addresses to a physical point of origin." *808 Holdings, LLC v. Collective of December 29, 2011 Sharing Hash E37917C8EEB4585E6421358FF32F29C D63C23C91*, No. 12-cv-00186 MMA (RBB), 2012 WL 12884688, at *4 (S.D. Cal. May 8, 2012); *see also Pink Lotus Entm't, LLC v. Does 1–46*, No. C-11-02263, 2011 WL 2470986, at *3 (N.D. Cal. June 21, 2011) (finding that the plaintiff met its burden to identify the Doe defendants with sufficient specificity by identifying the Doe defendants' IP addresses and then using geolocation technology to trace the IP addresses to a point of origin).

Here, Plaintiff has sufficiently demonstrated that Defendant is a real person or entity likely subject to the Court's jurisdiction. Plaintiff attached to its Complaint a table reflecting that the subscriber assigned IP address 174.66.186.144 engaged in allegedly infringing activity between January 16, 2019, and November 22, 2019, in San Diego, California. (ECF No. 1-2 at 1–3.) To substantiate these claims, Plaintiff attached four declarations to the instant motion. Plaintiff first attached the Declaration of David Williamson, an independent contractor hired by Plaintiff as an Information Systems and Management Consultant. (ECF No. 4-2 at 1–15 ("Ex. A").) Mr. Williamson states that he "oversaw the design, development, and overall creation of the infringement detection system called VXN Scan[,] which [Plaintiff] both owns and uses to identify the IP addresses used by individuals infringing Plaintiff's movies via the BitTorrent protocol." (Ex. A ¶ 40.) Mr. Williamson then explains in detail how VXN Scan operates and its five

components. One component of VXN Scan is the creation of a Proprietary BitTorrent Client that emulates the behavior of a standard BitTorrent client by repeatedly downloading data pieces from peers within the BitTorrent network that are distributing Plaintiff's movies. (*Id.* ¶¶ 52–55.) Another component of VXN Scan is the PCAP Recorder, which records the IP addresses connecting to the Proprietary Client and sending the infringed copies of Plaintiff's movies to the Proprietary Client through the BitTorrent network. (*Id.* ¶¶ 57–59.) Not only does a PCAP, or packet capture, record the IP addresses used in the network transaction, but it also records the port number and BitTorrent client used to accomplish each transaction and identifies the "Info Hash associated with the infringing computer file," which reflects the metadata of the particular underlying .torrent file being shared without authorization. (*Id.* ¶¶ 61–62.) Although this Order touches on only two of the components of VXN Scan, Mr. Williamson's eighty-one-paragraph Declaration sets forth additional in-depth details of all five components of the system, providing the Court with a thorough understanding of how the system reliably identifies the IP addresses assigned to individuals infringing Plaintiff's movies and verifies the infringement. (*See id.* ¶¶ 63–81.)

Second, Plaintiff provided the Declaration of Patrick Paige, a computer forensics expert Plaintiff retained to analyze and retain evidence captured by VXN Scan. (ECF No. 4-2 at 16–21 ("Ex. B").) Mr. Paige explains that VXN Scan "recorded numerous BitTorrent computer transactions between the system and [IP address] 174.66.186.144 in the form of PCAPs." (Ex. B ¶ 13.) Mr. Page states that, using a program called Wireshark, he analyzed a PCAP he received from Plaintiff and was able to confirm that on November 22, 2019, IP address "174.66.186.144 uploaded a piece or pieces of a file corresponding to [a] hash value" that "correlates" to one of Plaintiff's movies. (*Id.* ¶¶ 16–19.) Mr. Page further states that this PCAP is evidence that IP address 174.66.186.144 engaged in the alleged infringing activity during the relevant time period. (*Id.* ¶ 20.) Mr. Page opines that Cox Communications, Defendant's ISP, "is the only entity that can correlate [this] IP address to this subscriber and identify Defendant." (*Id.* ¶ 22.)

Third, Plaintiff provided the Declaration of Susan Stalzer, an employee of Plaintiff's who verified that each digital file the Proprietary Client received through its transactions with IP address 174.66.186.144 was identical or strikingly similar of one of Plaintiff's copyrighted works. (ECF No. 4-2 at 22–25 ("Ex. C").) To do so, Ms. Stalzer viewed the unauthorized motion pictures corresponding with the file hashes side-by-side with Plaintiff's original movies. (*See* Ex. C ¶¶ 9–10.)

Finally, Plaintiff provided the Declaration of Emilie Kennedy, Plaintiff's in-house General Counsel. (ECF No. 4-2 at 26–29 ("Ex. D").) Ms. Kennedy explains that after Plaintiff received data from VXN Scan identifying IP address 174.66.186.144 as infringing its movies, "the IP address was automatically inputted into Maxmind's Geolocation Database . . . on February 9, 2019."[3] (Ex. D ¶ 4.) "Maxmind [then] determined that the IP address traced to a location in San Diego, California." (*Id.* ¶ 5.) Ms. Kennedy states that Plaintiff inputted IP address 174.66.186.144 again into the Maxmind Database "prior to filing its Complaint" and "before filing [her] [D]eclaration," and both times the IP address continued to trace to San Diego, California. (*Id.* ¶¶ 6–7.) In its motion, Plaintiff further argues that this Court has previously "accepted Maxmind's findings for purposes of

---

[3]  Mr. Williamson provides in his declaration that:

> Maxmind is "an industry-leading provider of IP intelligence and online fraud detection tools." "Over 5,000 companies use GeoIP data to locate their Internet visitors and show them relevant content and ads, perform analytics, enforce digital rights, and efficiently route Internet traffic." Maxmind is not "software" or technology, but instead it is a database. Maxmind compiles information it receives from Internet Service Providers (ISPs) containing the city and state locations of the users of the ISPs and their respective IP addresses. Maxmind maintains and updates this list weekly and sells access to it.

(Ex. A ¶ 77 (footnotes omitted).)

allowing expedited discovery." (ECF No. 4-1 at 12 (citing *Criminal Prods., Inc. v. Doe*, No. 16-cv-2589 WQH (JLB), 2016 WL 6822186, at *3 (S.D. Cal. Nov. 18, 2016).)

Based on Plaintiff's IP address tracing efforts, the timing of its efforts, and Plaintiff's continued tracing of IP address 174.66.186.144 to San Diego, California, the Court concludes that Plaintiff has met its evidentiary burden of identifying Defendant with sufficient specificity and has shown that Defendant's IP address likely relates to a physical address within the Court's jurisdiction.

**B.     Previous Attempts to Locate Defendant**

Plaintiff must next identify all steps it took to locate Defendant to ensure the Court that it has made a good faith effort to identify and serve process on Defendant. *See Columbia Ins. Co.*, 185 F.R.D. at 579. The Court finds that Plaintiff has met this burden.

In its motion, Plaintiff states that it has diligently attempted to locate Defendant by searching for Defendant's IP address using online search engines and "various web search tools." (ECF No. 4-1 at 12–13.) Plaintiff has also "review[ed] numerous sources of authority," such as "legislative reports, agency websites, [and] informational technology guides" regarding whether it is possible to identify such a defendant by other means and has "discussed the issue at length with computer investigators and cyber security consultants." (*Id.* at 13.) Plaintiff argues that it cannot determine any other means of obtaining Defendant's identity other than through subpoenaing the information from Defendant's ISP.

Further, as discussed above, Plaintiff retained Mr. Paige, a computer forensics expert, who analyzed the data captured by VXN Scan and was able to determine that IP address 174.66.186.144 was engaged in the allegedly infringing activity on November 22, 2019. (*See* Ex. B ¶¶ 13–19.) Mr. Paige also opined that Defendant's ISP is the only entity that can correlate IP address 174.66.186.144 to its subscriber and identify Defendant as the person assigned this IP address during the time of the alleged infringement. (*Id.* ¶ 22.)

///

///

Based on the foregoing, the Court is satisfied that Plaintiff has made a good faith effort to locate Defendant and that Plaintiff cannot, on its own, identify Defendant with any greater specificity than as the subscriber assigned by Cox Communications to IP address 174.66.186.144. Accordingly, the Court finds that Plaintiff has made a good-faith effort to identify and locate Defendant before filing the instant motion.

## C. Whether Plaintiff's Complaint Could Withstand a Motion to Dismiss

Lastly, Plaintiff must establish that its Complaint could survive a motion to dismiss. *Columbia Ins. Co.*, 185 F.R.D. at 579. The Court finds that Plaintiff has met this burden.

Plaintiff's Complaint alleges a single cause of action against Defendant: direct copyright infringement. (ECF No. 1 ¶¶ 37–42.) To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a claim of direct copyright infringement, a plaintiff "must show: (1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (citing 17 U.S.C. § 501(a) (2003)). "In addition, direct infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017).

In the Complaint, Plaintiff alleges to be the owner of the fifty-two copyrighted works at issue and asserts that each work was registered with the United States Copyright Office. (ECF No. 1 ¶¶ 4, 34.) Exhibit A to the Complaint, which shows the hash values of the purportedly infringed movies, contains the copyright registration for each of the works that correspond with those hash values. (ECF No. 1-2 at 1–3.) Plaintiff further alleges that Defendant is the user behind IP address 174.66.186.144 who used the BitTorrent file network to illegally download and distribute Plaintiff's copyrighted motion pictures," and that the infringement was "continuous and ongoing." (*Id.* ¶¶ 25, 33.) Lastly, Plaintiff alleges that "[a]t no point in time did [it] authorize, permit or consent to Defendant's

copying, distribution, performance and/or display of its Works, expressly or otherwise." (*Id.* ¶ 38.)

The Court finds that Plaintiff has alleged a prima facie case of direct copyright infringement and therefore, its Complaint would likely withstand a motion to dismiss by Defendant.

**D.     Specific Discovery Request**

Finally, before the Court grants Plaintiff's Motion, Plaintiff "should file a request for discovery with the Court." *Columbia Ins. Co.*, 185 F.R.D. at 580. Plaintiff has not provided the Court with a proposed subpoena, but the Court has sufficient information to determine that "there is a reasonable likelihood that [a subpoena] will lead to identifying information about [D]efendant that would make service of process possible." *Id.* Plaintiff states that it plans to issue a subpoena upon Cox Communications, Defendant's ISP, requesting only the true name and address of the subscriber of IP address 174.66.186.144. (ECF No. 4-1 at 7, 16.) Further, Plaintiff provides that Cox Communications is the only entity that can identify Defendant by his, her, or its IP address. (Ex. B ¶ 22.) Accordingly, the Court finds that Plaintiff need not file the proposed subpoena with the Court.

## IV.     CONCLUSION

For the reasons set forth above, the Court finds good cause to grant Plaintiff leave to serve a Rule 45 subpoena upon Cox Communications in advance of the Rule 26(f) conference. However, the Court shares the concern noted by other courts in this district of "'unscrupulous tactics [being] used by certain plaintiffs, especially in the adult film industry, to shake down the owners of IP addresses' to exact quick and quiet settlements from possibly innocent defendants who pay out only to avoid potential embarrassment." *Malibu Media, LLC v. John Doe*, No. 16-cv-00786-JLS-NLS, 2016 WL 9488778, at *4 (S.D. Cal. May 6, 2016) (quoting *Malibu Media, LLC v. Does 1–5*, No. 12 Civ. 2950(JPO), 2012 WL 2001968, at *1 (S.D.N.Y. June 1, 2012)). The Court therefore finds that a limited protective order is necessary to protect Defendant's privacy. Further, Plaintiff has invited the Court to issue a protective order establishing procedural safeguards "if the Court finds

such procedures appropriate." (ECF No. 4-1 at 17.) Accordingly, the Court **GRANTS** Plaintiff's *ex parte* motion and **ORDERS** as follows:

1. Plaintiff may serve on Cox Communications a subpoena, pursuant to and compliant with the procedures of Federal Rule of Civil Procedure 45, seeking only the name and address of the subscriber assigned IP address 174.66.186.144 for the relevant time period of the alleged infringement. Plaintiff shall not seek from Cox Communications any other personally identifiable information about the subscriber;

2. Plaintiff's subpoena to Cox Communications must provide a minimum of forty-five (45) calendar days' notice before any production responsive to the subpoena shall be made to Plaintiff;

3. At the time Plaintiff serves its subpoena on Cox Communications, Plaintiff shall also serve on Cox Communications a copy of this Order;

4. Within fourteen (14) calendar days after service of the subpoena, Cox Communications shall notify the subscriber assigned IP address 174.66.186.144 that his, her, or its identity has been subpoenaed by Plaintiff and shall provide the subscriber a copy of this Order with the required notice;

5. The subscriber whose identity has been subpoenaed shall have thirty (30) calendar days from the date of such notice to challenge Cox Communications' disclosure of his, her, or its name and address by filing an appropriate pleading with this Court contesting the subpoena;

6. If Cox Communications seeks to modify or quash the subpoena, it shall do so as provided by Federal Rule of Civil Procedure 45(d)(3);

7. In the event a motion to quash, modify, or otherwise challenge the subpoena is brought properly before the Court, Cox Communications shall preserve the information sought by the subpoena pending the resolution of any such motion; and

8. Plaintiff may only use the information disclosed in response to a Rule 45 subpoena served on Cox Communications for the purpose of protecting and enforcing Plaintiff's rights as set forth in its Complaint. If Defendant wishes to proceed

anonymously, Plaintiff may not release any identifying information without a court order allowing the release of the information.

**IT IS SO ORDERED.**

Dated: March 2, 2020

Hon. Jill L. Burkhardt
United States Magistrate Judge